UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY, a
foreign corporation,

Plaintiff,

v.

RICHARD L. KOCH, an individual,

Defendant.

CASE NO. C08-5394BHS

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on Plaintiff's motion for summary judgment (Dkt. 27). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Plaintiff's motion for the reasons stated herein.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This matter arises out of a dispute between Plaintiff and Defendant regarding three disability insurance policies that Defendant obtained from Plaintiff. Dkt. 32 at 1. Plaintiff seeks to rescind all three of these insurance contracts because Defendant allegedly provided fraudulent answers in his applications and oral personal history interview, which Plaintiff relied on in approving his disability income insurance policies. *See* Dkt. 27 at 1, 5-14 (Plaintiff's motion for summary judgment); *see also* Dkt. 32 at 1-2 (Defendant's opposition to summary judgment).

On December 23, 1992, Plaintiff issued two disability income policies to Defendant. Declaration of James Howard ("Howard Decl."), Exs. 9 ("Policy D942877") and 10 ("Policy D942881"). Plaintiff made approval of these two policies dependant on Defendant's participation in an oral personal history interview, which took place on January 14, 1993. Dkt. 29, Declaration of Gail Meye ("Meye Decl."), Ex. B (scanned copy of documented record of Plaintiff's oral personal history interview). On February 28, 1994, Plaintiff issued a third disability insurance policy to Defendant. Dkt. 32-3, Declaration of Kenneth Friedman ("Friedman Decl."), Ex. 3 ("Policy D1039334").

On May 1, 2007, Defendant was diagnosed with Bilateral Vestibular Hypofunction. Friedman Decl., Ex. 5 at 1. On May 23, 2007, based on this diagnosis, Defendant filed a claim under his disability insurance policies. *Id*. On June 6, 2007, Plaintiff began investigating Defendant's claim. Meye Decl., Ex. F at 1-3.

During its investigation, Plaintiff requested medical records from Defendant. *Id.* at 2. Plaintiff received and reviewed medical records from Dr. Jay Rubinstein, Dr. Robert Marlan, and Dr. Daniel Dugaw. *Id*. Dr. Dugaw's records for Defendant contained a note regarding Defendant's prior treatment for bipolar depression, which referenced a 12-year time frame. *Id*. at 2-3. Plaintiff determined that this period of treatment ended within a period of months before the issuance of Defendant's first two policies and a couple of years before the third policy was issued. *See id*. at 4. When asked about this treatment, Defendant provided Plaintiff with the name of Dr. Andrew Hwang, a psychiatrist he saw in March of 1994. *Id*. at 2-3. Defendant also informed Plaintiff that he had been "diagnosed with bipolar disorder in March of 1994." *Id*. Dr. Hwang informed Plaintiff that Defendant had been a patient of Dr. Jeffery Swinehart[1] in 1991. *Id*. at 3. Dr. Hart treated Defendant with anti-depressant medications. *Id*. at 3; *see also* Dkt. 32 at 5

---

[1]Dr. Swinehart is now known as Dr. Hart; the record reflects both usages but that Dr. Hart is the name currently used by this doctor. *See* Dkt. 32 at 9. The Court will refer to Dr. Swinehart as Dr. Hart from this point forward.

(Plaintiff admits to seeing Dr. Hart). Dr. Hwang also provided the name Ruth Chaffee, Ph.D., as the referring doctor for Defendant's treatment with Dr. Hwang. *Id*. However, because of the length of time since Defendant had seen Dr. Chaffee, no records were available for Plaintiff's review. *Id*. at 3. The following is a list of other pertinent undisputed facts that were discovered during Plaintiff's investigation of Defendant's medical history:

1.      Defendant was treated for depression by Dr. Hart, M.D. (a psychiatrist), from April 1991 to July 1992. Howard Decl., Ex. 3 at 1; *see also id*., Ex. 2 (Deposition of Richard L. Koch ("Koch Dep.")) at 117 (deposition pagination) (Defendant admitting he does not dispute this fact).

2.      Defendant saw Dr. Hart approximately 20 times during the relevant period. *Id*.

3.      Defendant had blood tests done during the time he saw Dr. Hart. Koch Dep. at 166 (deposition pagination) (Defendant admits to having such tests).

4.      At the time of applying for the relevant insurance policies, Defendant was aware that his two brothers had been under the care of psychiatrists and treated with medication for depression. Howard Decl., Ex. 3 at 1 (record of Dr. Hart referencing Defendant's family history and noting Defendant's knowledge of brothers being medically treated for depression).

5.      Defendant undergoes psychological treatment with Ruth Chaffee, Ph.D., between 1991 and 1994. Meye Decl., Ex. F at 3.

Each of Defendant's disability income insurance policies put him on notice that the "[q]uestions in the application . . . must be answered truthfully and completely; otherwise, the validity of the policy and the payment of any benefits thereunder may be voided." *See, e.g.*, Policy D942877 at 26. Each policy also contained the following provision: "after this policy has been in force for two years from the Date of Issue, *no misstatement, except a fraudulent misstatement*, in the application may be used to rescind the policy or

to deny a claim for disability or loss that starts after the two year period." *See, e.g.*, Policy D1039334, Section 7.2.

With respect to the disputed policies, Plaintiff asserts that Defendant provided fraudulent answers to the following questions:

**33B.** Question 33B of the applications asked Defendant: "[i]n the last 10 years, have you had or have you been medically treated for . . . mental, nervous or psychiatric disorder?" Policy D942877 at 26; Policy D1039334 at 20. Defendant responded in the negative. Policy D942877 at 26; Policy D1039334 at 20.

**36A.** Question 36A of the applications asked Defendant whether he "within the past 5 years . . . [h]ad any physician or practitioner advise or treat [him.]" Policy D942877 at 26; Policy D1039334 at 20. Defendant responded to this question in the negative (Policy D942877 at 26) and in the affirmative (Policy D1039334 at 20).

**36B.** Question 36B of the applications asked Defendant whether he had "been a patient in a hospital, clinic, or medical facility." Policy D942877 at 26; Policy D1039334 at 20. Defendant responded to this question in the negative. Policy D942877 at 26; Policy D1039334 at 20.

**36C.** Question 36C of the applications asked Defendant whether "within the past 5 years . . . [Defendant had an] EKG, X-ray [or] other test." Policy D942877 at 26; Policy D1039334 at 20. Defendant responded to this question in the negative. Policy D942877 at 26; Policy D1039334 at 20.

**38.** Question 38 of the applications asked Defendant whether anyone in his family had "[d]iabetes, cancer, melanoma, heart or kidney disease, *mental illness*, or suicide[.]" Policy D942877 at 26 (emphasis added); Policy D1039334 at 20 (emphasis added). Defendant did not provide any information for this question on his application for Policy D942877 other than the ages of his parents and his two brothers. Policy D942877 at 26. However, Defendant in answering the same

question for Policy D1039334 stated that his parents and two brothers were in "excellent health." Policy D1039334 at 20.

**Question 13, personal history interview.** Question 13 on the oral personal history interview document asked Defendant whether he had "consulted any other health care providers such as osteopaths, chiropractors, *psychiatrists*, outpatient clinics, emergency rooms, or any other type of doctors within the past *5 years*." Meye Decl., Ex. B at 2 (emphasis added). Defendant responded to this question in the negative. *Id.*

On March 7, 2008, based on Plaintiff's investigation, Plaintiff sought to rescind all three policies because Defendant provided answers to his policy applications and personal history interview that Plaintiff alleges were fraudulent misstatements. Dkt. 29, Meye Decl. , Ex. F. In doing so, Plaintiff returned all premiums paid and demanded return of benefits totaling $24,924.00, which had been paid on Policy D942877. *Id.* at 4-5.

On June 23, 2008, Plaintiff filed a complaint for declaratory judgment, rescission, and restitution against Defendant. Dkt. 1. On August 4, 2008, Defendant answered and asserted counterclaims against Plaintiff for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) a violation of the Washington State Insurance Fair Conduct Act, RCW 48.30.015. Dkt. 6. On August 21, 2008, Plaintiff answered the counterclaims and asserted affirmative defenses. Dkt. 7.

On September 3, 2009, Plaintiff filed a motion for summary judgment. Dkt. 27. On September 8, 2009, Defendant responded and included a motion to strike. Dkt. 32. On September 11, 2009, Plaintiff replied. Dkt. 33.

## II. DISCUSSION

### A. Defendant's Motion to Strike

Defendant moves the Court to strike Plaintiff's use of his oral personal history interview as a basis for rescinding Defendant's insurance policies. Dkt. 32 at 21-22. Defendant claims that RCW 48.18.090 prevents oral representations from being used to

rescind disability insurance contracts. *Id.* at 21. Defendant further asserts that only written representations may be used to rescind such policies. *Id.*

In opposition, Plaintiff asserts that this statute expressly allows for the use of oral personal history where there is a misrepresentation made with the intent to deceive and that such use has been authorized by this Court. Dkt. 33 at 11-12.

Washington state law limits rescission of insurance contracts. *See* RCW 48.18.090. This statute provides, in pertinent part, as follows:

> (1) Except as provided in subsection (2) of this section, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his or her behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, *unless the misrepresentation or warranty is made with the intent to deceive*.
> (2) In any application for life or disability insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

RCW 48.18.090 (emphasis added).

Although Defendant correctly notes that subsection (2) of this statute pertains only to written statements, Defendant ignores the express provision of subsection (1). RCW 48.18.090(1) expressly provides that where misrepresentation, oral or written, is made with the intent to deceive, such misrepresentation is a ground for rescinding a contract. RCW 48.18.090(1). In *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 997 (W.D. Wash. 2004) (Pechman, J.), the Court had occasion to interpret this statutory language. In doing so, it found that certain conference calls contained material misrepresentations that were made with an intent to deceive and, as such, created grounds enough for the defendant insurance company to rescind the director's and officer's insurance contracts that it had with the insured. *Id.*

The Court adopts the reasoning and analysis of *Cutter & Buck* as it relates to interpreting RCW 48.18.090(1). To the extent it provides a basis for rescission, Plaintiff is entitled to rely on Defendant's oral personal history interview.

**B.    Summary Judgment**

Plaintiff claims that Defendant fraudulently misrepresented his medical history by providing false answers to several questions in the policy applications and one question in his personal history interview. Dkt. 27 at 1-2; *see also* Dkt. 33 at 11-12.

**1.    Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual

issues of controversy in favor of the nonmoving party only when the facts specifically

attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at

trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific

statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan*

*v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

In *T.W. Elec. Serv., Inc.*, the court stated that

> at this stage of the litigation, the judge does not weigh conflicting evidence
> with respect to a disputed material fact. Nor does the judge make credibility
> determinations with respect to statements made in affidavits, answers to
> interrogatories, admissions, or depositions. These determinations are within
> the province of the fact finder at trial.

809 F.2d at 630 (citing *Anderson*, 477 U.S. at 253). The Seventh Circuit has also cited

*Anderson* for the proposition that:

> Because summary judgment is not a paper trial, the district court's role in
> deciding the motion is not to sift though the evidence, pondering the
> nuances and inconsistencies, and decide whom to believe. The court has
> one task and one task only: to decide, based on the evidence of record,
> whether there is any material dispute of fact that requires a trial.

*Waldridge v. American Hoechst Corp.*, 24 F. 3d 918, 920 (7th Cir. 1994) (citing

*Anderson*, 477 U.S. at 249-50). The fact finder is best suited to weigh issues of

credibility and questions of fact. *See Markman v. Westview Instruments*, *Inc.*, 517 U.S.

370 (1996).

### 2.    Plaintiff's Summary Judgment Motion

Plaintiff moves the Court to enter summary judgment in Plaintiff's favor by

finding (1) that Plaintiff is entitled to rescind coverage for Defendant's disability

insurance policies and (2) that Defendant's counterclaims for breach of contract, breach

of duty of good faith and fair dealing, and bad faith denial and termination of coverage

pursuant to RCW 48.30.015 should be dismissed. Dkt. 27 at 1. This motion is based on

Plaintiff's contention that Defendant fraudulently answered several questions in his

applications for the three disability insurance policies. Dkt. 32 at 2. Defendant does not dispute Plaintiff's rescission of Policy D942881. *Id.* at 21. Because Defendant does not dispute the rescission of D942881, the Court grants Plaintiff's motion for summary judgment with respect to this policy.

On the other hand, Defendant does dispute Plaintiff's attempt to rescind Policy D942877 and Policy D1039334. The particular questions at issue in the disputed policies are 33B, 36A, 36B, 36C, 38, and question 13 from the oral personal history interview. Dkt. 33 at 6-9 (discussing Defendant's answers for 33B, 36A, 36B, 36C, and 38); *see also* Dkt. 27 at 9-10 (discussing Defendant's answer to his oral personal history interview).

### 3. Burden of Proof

In ruling on Plaintiff's summary judgment motion, the Court considers the substantive evidentiary burden that Plaintiff must meet at trial. *See Anderson*, 477 U.S. at 254 (applying a "clear and convincing" standard on motion for summary judgment); *see also T.W. Elec. Serv., Inc.*, 809 F.2d at 630. "Misrepresentation in obtaining insurance must be proved by clear, cogent, and convincing evidence." *Queen City Farms v. Cent. Nat'l Inc. Co. of Omaha*, 126 Wn.2d 50, 97 (1994) (citing *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 462 (1969)). "The standard of proof is a high one, requiring 'that the trier of fact be convinced that the fact in issue is highly probable.'" *Id.* (citing *Colonial Imports, Inc. v. Carlton Northwest, Inc.*, 121 Wn.2d 726, 735 (1993)). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255. Here, Plaintiff must meet this burden by proving Defendant's alleged misrepresentations by clear, cogent, and convincing evidence.

### 4. Washington Insurance Law

#### a. Intent to Deceive

Where an insured made false statements with an intent to deceive, the insurer is permitted to rescind the contract. RCW 48.18.090. Liability on an insurance policy can be

avoided where the insured knowingly made untrue representations in applying for an insurance policy and that, in making such representations, the applicant had an intent to deceive the company. *Equitable Life Assur. Soc. v. MacDonald*, 96 F.2d 437 (9th Cir. 1938); *see also Kay v. Occidental Life Ins. Co.*, 28 Wn.2d 300 (1947). An intent to deceive must be shown to void a disability insurance policy based on misrepresentations in negotiation for the policy. *See, e.g., Houston v. New York Life Ins. Co.*, 166 Wn. 611 (1932); *Mills v. Continental Life Ins. Co.*, 162 Wn. 555 (1931). The insurance company bears the burden of establishing that any false statements were made with an actual intent to defraud. *Equitable Life Ins. Co. of Iowa v. Carver*, 17 F. Supp. 23 (W.D. Wash. 1936).

"Under Washington law, a clause voiding an insurance policy for the insured's material misstatement is enforceable." *Onyon v. Truck Ins. Exchange*, 859 F. Supp 1338, 1341 (W.D. Wash. 1994) (citing *Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 649 (1988)); *Saint Paul Mercury Ins. Co. v. Salovich*, 41 Wn. App. 652, *review denied*, 104 Wn.2d 1029 (1985). Courts will enforce such clauses regardless of prejudice caused to the insurance company. *Cox*, 110 Wn.2d at 649. "The key question is whether the misstatement was material . . . . While materiality is generally a mixed question of law and fact, it may be decided as a matter of law 'if reasonable minds could not differ on the question.'" *Id*. (quoting *Long v. Insurance Co. of N. Am.*, 670 F. 2d 930, 934 (10th Cir. 1982)). As ruled in *Cutter & Buck*, rescission is permitted where "(1) [the insured] represented certain information as truthful to [the insurer] during the negotiation of the insurance contract, (2) those representations were untruthful; that is, they were misrepresentations, (3) the misrepresentations were material, and (4) they were made with the intent to deceive [the insurer]." 306 F. Supp. 2d at 997.

The Washington State Supreme Court has held that "[w]hen a false statement has been made knowingly, there is a presumption that it was made with intent to deceive." *See Cutter & Buck*, 306 F. Supp. 2d at 1004 (citing *Music v. United Ins. Co. of Am.*, 59 Wn.2d 765, 769 (1962)). If, however, there is credible evidence that the alleged

misrepresentations were made without intent to deceive, then that determination is a question for the jury. *Id.*

Here, Defendant signed applications for disability insurance contracts with Plaintiff that each contained a clause stating "[q]uestions in the application . . . must be answered truthfully and completely; otherwise, the validity of the policy and the payment of any benefits thereunder may be voided." *See, e.g.*, Policy D942877 at 26. The Court finds that this clause satisfies the first factor identified in *Cutter & Buck*. Therefore, to the extent any misrepresentations were made (factor (2)), Plaintiff must establish that the misrepresentations were (3) material and (4) made with the intent to deceive. *See Cutter & Buck*, 306 F. Supp. 2d at 997.

### b.    Materiality

In the case of written misrepresentations in life or disability insurance agreements, "actual intent to deceive" does not necessarily need to be established in order to rescind the insurance agreement. RCW 48.18.090(2) provides as follows:

> In any application for life or disability insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or *unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.*

(Emphasis added). Subsection (2) still requires that a false statement be made on the part of an insured. *Id*. To establish such falsity requires a showing that the insured "knowingly [made] . . . false statements . . . ." *Oregon Nat. Life Ins. Co. v. Superior School Photo Service, Inc.* 462 F.2d 1235, 1236 (9th Cir. 1972). Once the false statement has been shown, then grounds for rescission may be shown by establishing either that (a) the insured had an "actual intent to deceive" or (b) the false statement "materially affected either acceptance of the risk or the hazard assumed by the insurer." *Id.*

Three separate means exist for establishing such materiality. First, a "representation made in conjunction with an insurance policy application or negotiation is

ORDER - 11

material if the representation influenced the insurance company's decision to issue the coverage." *Cutter & Buck*, 306 F. Supp. 2d at 1003. Second, "[i]nformation is material if the information measures the risk, which is the touchstone of any insurance contract." *Id.* (citing *Verex Assurance, Inc. v. John Hanson Savings and Loan, Inc.*, 816 F. 2d 1296, 1302 (9th Cir. 1987)). Finally, "when an insurer specifically asks information in regard to a certain matter, the presumption is that the matter is material." *Id.* The presumption of materiality, like the presumption of deceitful intent, is rebuttable by credible evidence, and, where there is conflicting evidence, the question of materiality is one for the jury. *See, e.g., Olson v. Bankers Life Insurance Co. of Nebraska*, 63 Wn.2d 547, 388 P.2d 136, 139 (1964).

The particular questions at issue in the disputed policies are 33B, 36A, 36B, 36C, 38, and question 13 from the oral personal history interview. Dkt. 33 at 6-9. Plaintiff asserts that Defendant, in answering these questions, provided material misrepresentations that entitle Plaintiff to rescind the insurance agreements. Dkt. 27 at 17.

### 5. Allegedly Misrepresented Answers

#### a. Question 33B

First, Plaintiff claims that Defendant should have disclosed his visits with Dr. Hart. *See* Dkt. 27 at 5-6. Plaintiff points out that question 33B of the medical history section in Defendant's 1992 and 1994 policy applications asked him to disclose whether "[i]n the last 10 years [Plaintiff had] been medically treated for . . . mental, nervous or psychiatric disorder." Policy D942877 at 26; Policy D1039334 at 20. Plaintiff claims that Defendant's answer to this question in the negative was false and fraudulent. Dkt. 27 at 6.

In opposition, Defendant claims that he did not respond to question 33B falsely or fraudulently. *See* Dkt. 32. Rather, he asserts that, at the time, "he did not believe he had ever been diagnosed or treated for a mental, nervous or psychiatric disorder prior to March 1994 . . . ." Friedman Decl., Ex. 1 at 57:15-58:12 (deposition pagination). In Defendant's deposition, Defendant claimed he did not "recall any conversations that gave

[him] a diagnosis" for major depression. *Id.* at 67:25-68:12 (stating that he had no recollection of an assessment of major depression being relayed to him by Dr. Hart).

Dr. Hart testified in his deposition that he does not recall ever explaining any diagnosis to Defendant. Friedman Decl., Ex. 7 (Deposition of Dr. Jeffery Hart ("Hart Dep.")) at 79:2-4 (deposition pagination). In his deposition, Dr. Hart was asked whether, when talking with Defendant about his condition, he had used the terms "mental, nervous or psychiatric disorder." *Id.* at 80:2. Dr. Hart responded in the negative. *Id.* at 80:6-8. Dr. Hart was also asked whether there was "any distinction in the meaning of . . . 'mental disorder' or 'nervous disorder' or 'psychiatric disorder.'" *Id.* at 76:14-16. Dr. Hart responded as follows:

> I'm not sure. You know, each of these are terms that could overlap or be interchangeable. From a psychiatrist's point of view, mental disorder in some individuals' minds means psychotic disorder or thought disorder, hearing voices or a nervousness.
> Again, all individuals have their own take on what these mean, but in terms of a psychiatrist's view of it, these are ways that psychiatric conditions are referred to as either nervous, mental, or psychiatric conditions.

*Id.* at 80:17-25.

The Court must view this evidence in the light most favorable to Defendant. "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *See T.W. Elec. Service, Inc.*, 809 F. 2d at 631. In other words, if a rational trier of fact could resolve this issue in favor of Defendant, the Court must deny summary judgment. *See Matsushita*, 475 U.S. at 599.

Here, Dr. Hart and Defendant claim that they do not recall any discussion of a diagnosis for "mental, nervous or psychiatric disorder." Hart Dep. at 79:2-4; *see also* Friedman Decl., Ex. 1 at 57:15-58:12. Dr. Hart also cannot recall using such words with Defendant. Hart Dep. at 80:6-8. These assertions create a question of fact, which is for a jury to decide. *See Music,* 59 Wn.2d at 669. Therefore, the Court denies Plaintiff's motion for summary judgment on this issue because a material fact exists as to whether

Defendant knowingly provided a false answer to question 33B. *See Oregon Nat. Life Ins. Co.*, 462 F.2d at 1236.

### b. Question 36A

Second, Plaintiff asserts that Defendant provided fraudulent misrepresentations when he answered question 36A on the insurance policy applications. *See* Dkt. 27 at 6. Question 36A from the disputed policies asked Defendant whether he "[h]ad any physician or practitioner examine, advise or treat him." Policy D942877 at 26; Policy D1039334 at 20.

Defendant argues that the terms "physician" and "practitioner" do not necessarily include a psychiatrist or psychotherapist. *See* Dkt. 32 at 12. Defendant also claimed in his deposition that, at the time he answered 36A in the negative on the disputed policy applications, he "had no sense . . . that it was false." Dkt. 32, Friedman Decl., Ex. 1, Koch Dep. at 168:19-21.

Assuming the truth of these facts, as the Court must for the purpose of considering a motion for summary judgment, a question of fact exists as to whether Defendant knowingly provided a false answer to question 36A. Such questions of fact are for a jury to decide. *See Music,* 59 Wn.2d at 669. In other words, Plaintiff is unable to provide clear, cogent, and convincing evidence that Defendant knowingly provided a false answer to question 36A. *See Queen City Farms*, 126 Wn.2d at 97 (1994) (citing *Beckendorf*, 76 Wn.2d at 462). Taking these facts in the light most favorable to Defendant, the Court denies summary judgment on this issue because a material fact exists as to whether Defendant knowingly provided a false answer to question 36A.

### c. Question 36B

Question 36B asked Defendant whether he, in the last 5 years, had "been a patient in a hospital, clinic, or medical facility." Policy D942877 at 26; Policy D1039334 at 20. Defendant responded to this question in the negative. Policy D942877 at 26; Policy

D1039334 at 20. Defendant argues that he did not knowingly provide a false answer to this question at the time of the representation. Dkt. 32 at 14.

Whether a hospital, clinic, or medical facility includes a psychiatrist's or psychologist's office in this contract is a question of fact for the jury to decide. Plaintiff fails to prove otherwise by clear, cogent, and convincing evidence. *See Queen City Farms*, 126 Wn.2d at 97 (1994) (citing *Beckendorf*, 76 Wn.2d at 462); *see also Music,* 59 Wn.2d at 669. Taking these facts in the light most favorable to Defendant, the Court denies summary judgment on this issue because a material fact exists as to whether Defendant knowingly provided a false answer to question 36B.

### d.    Question 36C

Question 36C asked Defendant whether "within the past 5 years . . . [Defendant had an] EKG, X-ray [or] other test." Policy D942877 at 26; Policy D1039334 at 20. Defendant responded to this question in the negative. Policy D942877 at 26; Policy D1039334 at 20. Defendant admits in his deposition to having blood work done during his treatment with Dr. Hart. Koch Dep. at 166:4-7. But Defendant argues he interpreted this question to ask whether he had other mechanical tests such as an EKG or X-ray, which in his mind did not include blood tests. *See* Dkt. 32 at 14.

Whether Defendant reasonably believed that his answer to question 36C was accurate creates a question of fact for the jury to decide. *See Queen City Farms*, 126 Wn.2d at 97 (1994) (citing *Beckendorf*, 76 Wn.2d at 462)*; see also Music,* 59 Wn.2d at 669. Taking these facts in the light most favorable to Defendant, the Court denies summary judgment on this issue because a material fact exists as to whether Defendant knowingly provided a false answer to question 36C.

### e.    Question 38

Question 38 asked Defendant whether anyone in his family had "[d]iabetes, cancer, melanoma, heart or kidney disease, *mental illness*, or suicide[.]" Policy D942877 at 26; Policy D1039334 at 20. Defendant did not provide any information for this

question on his application for Policy D942877 other than the ages of his parents and his two brothers. Policy D942877 at 26. However, Defendant in answering the same question for Policy D1039334 stated that his parents and two brothers were in "excellent health." Policy D1039334 at 20.

Defendant contends that he did not knowingly answer this question falsely. Dkt. 32 at 15. He argues that the question is asking whether his family members have been diagnosed with a "mental illness." *Id*. The only undisputed fact that Plaintiff has established related to this question is that Defendant was aware at the time of filling out the disputed applications that his two brothers had been treated for depression, not that they were mentally ill. Koch Dep. at 166:12-24.

The Court finds that Plaintiff has not provided any evidence on this issue to establish that Defendant knowingly provided a false answer to question 38.  Thus, a question of fact remains for a jury to decide. *See Music,* 59 Wn.2d at 669. In other words, Plaintiff is unable to prove as a matter of law by clear, cogent, and convincing evidence that Defendant knowingly provided a false answer to question 38. *See Queen City Farms*, 126 Wn.2d at 97 (1994) (citing *Beckendorf*, 76 Wn.2d at 462). Taking these facts in the light most favorable to Defendant, the Court denies summary judgment on this issue because a material fact exists as to whether Defendant knowingly answered question 38 falsely.

### f.      Personal History Interview, Question 13

As a preliminary matter, question 13 in the oral personal history interview only pertains to Defendant's 1992 policies, D942877 and D942881. Dkt. 29, Meye Decl., Ex. B at 1.  Plaintiff made approval of these two policies dependant on Defendant's participation in an oral personal history interview, which took place on January 14, 1993. *See id*. But Defendant does not dispute the rescission of D942881. Dkt. 32 at 21. Further, because this interview was conducted for approval of D942877 and D942881,

Defendant's response to this question does not have bearing on policy D1039334, which was issued in 1994.

Plaintiff required Defendant to participate in the oral personal history interview because he "had applied for disability benefits greater than he qualified for . . . ." Dkt. 27 at 8. During this interview, Plaintiff asked Defendant question 13 on the oral personal history interview document. Meye Decl., Ex. B at 2. This question asked Defendant whether he had "consulted any other health care providers such as osteopaths, chiropractors, *psychiatrists*, outpatient clinics, emergency rooms, or any other type of doctors within the past *5 years*." *Id*. (emphasis added). Defendant responded to this question in the negative. *Id*. But Defendant had seen Dr. Hart, a psychiatrist, within six months of the interview and within even less time before filling out his application for the 1992 disability insurance policies. Dkt. 27 at 9; *see also* Koch Dep. at 175:18-25. Defendant admitted that he falsely answered question 13 (Koch Dep. at 175:13-176:9) and provides no evidence that such statement was not knowingly made or made without intent to deceive.

Contrary to Defendant's argument that oral statements cannot be used to rescind an insurance agreement, as discussed earlier, RCW 48.18.090(1) clearly allows rescission in circumstances where a misrepresentation is made with the intent to deceive. Further, in *Cutter & Buck*, the Court found that material misrepresentations made with intent to deceive during a phone conference were grounds to rescind the contract. *See* 306 F. Supp. 2d at 997.

Defendant acknowledges that he did not provide a truthful answer to question 13 in the personal history interview. Koch Dep. at 175:13-176:9. The "key question is whether the misstatement was material . . . . While materiality is generally a mixed question of law and fact, it may be decided as a matter of law 'if reasonable minds could not differ on the question.'" *Cox*, 110 Wn.2d at 649 (quoting *Long v. Insurance Co. of N. Am.*, 670 F. 2d 930, 934 (10th Cir. 1982). In question 13, Plaintiff asked Defendant

specifically about his involvement with psychiatrists during a relevant period. Meye Decl., Ex. B at 2. Doing so gives rise to a presumption that the matter is material. *Cutter & Buck*, 306 F. Supp. 2d at 1003 (citing *Verex Assurance, Inc.*, 816 F. 2d at 1302); *see also Music*, 59 Wn.2d at 769. Because Defendant made this material misrepresentation knowingly, there is also a presumption that it was made with intent to deceive. *See Cutter & Buck*, 306 F. Supp. 2d at 1004 (citing *Music*, 59 Wn.2d at 769). Moreover, Defendant has failed to provide "credible evidence from which a jury could conclude that the alleged misrepresentations . . . were made without 'intent to deceive,'" *see Music*, 59 Wn.2d at 669, or that the false statements were not material. *See Oregon Nat. Life Ins. Co.*, 462 F.2d at 1237 (citing *Olson*, 63 Wn.2d at 547).

Therefore, with respect to policy D942877, no question of fact remains for a jury to decide. *See Music,* 59 Wn.2d at 669. Plaintiff has provided clear, cogent, and convincing evidence that Defendant intended to deceive Plaintiff by answering question 13 in the negative. *See Queen City Farms*, 126 Wn.2d at 97 (1994) (citing *Beckendorf*, 76 Wn.2d at 462). Taking these facts in the light most favorable to Defendant, the Court grants Plaintiff's motion for summary judgment with respect to policy D94877.

**6.    Materiality**

Defendant has established a question of fact as to whether he knowingly made false statements to the questions at issue in policy D1039334. However, should it be found by a fact finder that Defendant, in fact, knowingly provided false answers to any of the relevant questions, the materiality of those questions will be presumed. *See, e.g., Cutter & Buck*, 306 F. Supp. 2d at 1003 (noting the three ways which materiality can be established). The presumption of materiality, like the presumption of deceitful intent, is rebuttable by credible evidence, and, where there is conflicting evidence, the question of materiality is one for the jury. *See, e.g., Olson v. Bankers Life Insurance Co. of Nebraska*, 63 Wn.2d 547, 388 P.2d 136, 139 (1964).

Defendant argues that Plaintiff cannot establish materiality as a matter of law. Dkt. 32 at 16-18. This argument rests on the proposition that he did not knowingly provide false answers to the relevant questions. Dkt. 32 at 16-18. However, were it to be established at trial that Defendant did, in fact, knowingly provide false answers, then Plaintiff is entitled to the presumption of materiality based on at least one if not all of the means of establishing a presumption of materiality.

First, Plaintiff argues that Defendant made material representations in conjunction with an insurance policy application because the representation influenced the insurance company's decision to issue the coverage. Dkt. 33 at 9; *see also Cutter & Buck*, 306 F. Supp. 2d at 1003 (finding materiality in such circumstances). Plaintiff asserts it would have declined to issue coverage on policy D1039334 if Defendant would have answered "yes" to any of the disputed questions and then Plaintiff learned the full extent of Defendant's medical history. *See* Dkt. 29, Meye Decl., Ex. F at 2. Because Defendant fails to provide any conflicting evidence on this issue, the Court finds Plaintiff is entitled to a presumption of materiality on this basis, assuming Defendant knowingly provided false answers to the disputed application questions.

Even if Plaintiff is not entitled to a presumption of materiality on the preceding basis, Plaintiff argues the information solicited should be presumed material because it measured the risk, which was the touchstone of the insurance contract. *See Cutter & Buck*, 306 F. Supp. 2d at 1003 (citing *Verex Assurance, Inc. v. John Hanson Savings and Loan, Inc.*, 816 F. 2d 1296, 1302 (9th Cir. 1987)).

Here, again, Defendant provides no conflicting evidence to rebut Plaintiff's assertion that these questions that were intended to yield information at the touchstone of the contract. That is, this contract was for disability insurance. In soliciting information about Defendant's medical history, Plaintiff was attempting to measure the risk of providing coverage to Defendant. The Court finds Plaintiff is entitled to a presumption of

materiality on this basis, assuming Defendant knowingly provided false answers to the disputed application questions.

Even if Plaintiff were not entitled to a presumption of materiality on the foregoing bases, Plaintiff argues that it is entitled to the presumption of materiality because it specifically asked information in regards to certain matters in the application, such as, whether Plaintiff had seen a physician or practitioner within the past five years. Policy D1039334 at 20; *see also Cutter & Buck*, 306 F. Supp. 2d at 1003 (finding that the presumption of materiality exists when specific questions are asked in regard to certain matters) (citing *Verex Assurance, Inc.*, 816 F. 2d at 1302); *see also Music*, 59 Wn.2d at 769.

Here, when the Court assumes the falsity of Defendant's answers, it must also assume there is no question of fact as to what Defendant understood the relevant questions to mean. For example, if Defendant in responding to question 33B knew that it required him to disclose information about Dr. Hart, then it also means that Plaintiff was asking Defendant specifically about his involvement with psychiatrists and potentially other types of practitioners, which could include psychologists. That being the case, Plaintiff is entitled to the presumption of materiality on the basis that it asked a specific question about a certain matter. *Id.* Thus the Court finds Plaintiff is entitled to a presumption of materiality on this basis, assuming Defendant knowingly provided false answers to the disputed application questions.

Based on any of these ways of establishing a presumption of materiality, the Court determines that, as a matter of law, Plaintiff is entitled to the presumption of materiality. *See id*. The Court also finds that Defendant provides no contradictory evidence to rebut this presumption. *See id*. Therefore, assuming Defendant knowingly provided false statements or fraudulent misstatements, taking all the facts in the light most favorable to Defendant, the Court grants partial summary judgment in favor of the Plaintiff on the

issue of materiality because there is no material question of fact for a jury to decide on this issue.

**C.    Defendant's Counterclaims**

The Court dismisses Defendant's counterclaims with respect to policies D942877 and D942881. These claims are dismissed because they are predicated on the basis that Defendant's insurance contracts with Plaintiff are valid. Because the Court concludes Plaintiff is entitled to rescind D942881 (Defendant does not dispute this rescission, Dkt. 32 at 21) and D942877 (Defendant fraudulently misrepresented material facts permitting the policy's rescission by Plaintiff), no contract exists for these policies. Therefore, Defendant's counterclaims with respect to policies D942881 and D942877 must necessarily be dismissed.

On the other hand, at this time, the Court is unable to decide, as a matter of law, Defendant's counterclaims with respect to policy D1039334. Like the other counterclaims, Defendant's counterclaims with respect to D1039334 are predicated on there being a valid insurance contract. Because questions of fact exist as to whether Defendant knowingly provided false answers to the questions at issue when filing his application for D1039334, the Court is unable, at this time, to determine whether Plaintiff breached that contract or whether benefits under that contract were unreasonably denied.

**D.    Conclusion**

The Court grants Plaintiff's summary judgment motion on the issue of whether Plaintiff may rescind Defendant's insurance policies D942881 and D942877. The Court denies summary judgment with respect to policy D1039334. The Court grants partial summary judgment on the issue of materiality, if it is shown that Defendant's answers to any of the questions at issue were false. Based on these findings, the Court dismisses Defendant's counterclaims with respect to policies D942881 and D942877 and reserves judgment with respect to policy D1039334.

### III. ORDER

Therefore, it is hereby **ORDERED** that Defendant's motion for summary judgment (Dkt. 33) is **GRANTED** as to policies D942877 and D942881 and **DENIED** as to policy D1039334 as stated herein.

DATED this 15th day of October, 2009.

_____
BENJAMIN H. SETTLE
United States District Judge